## COLUMBIA TRUST & REALTY CO. *v.* ALSTON *et al.*

"When property is sold and conveyed by a common grantor at different times and to different purchasers, and taxes having a lien on all the property sold are due, the last property sold is primarily bound for the payment of all such taxes." Upon application of this principle to the facts of this case, the court did not err in granting the injunction prayed.

No. 5381.　October 18, 1926.

Injunction. Before Judge Humphries. Fulton superior court. March 10, 1926.

*Hewlett & Dennis,* for plaintiff in error.

*Alston, Alston, Foster & Moise, J. L. Mayson,* and *C. S. Winn,* contra.

Beck, P. J. N. C. Alston filed his petition against the Columbia Trust & Realty Company and others, seeking injunction and other equitable relief against the levy. of a tax execution which had been transferred to the company named. At the interlocutory hearing the plaintiff adduced evidence showing that he was the owner of the property upon which the levy had been made, and which will be referred to as the White Street property; that this property had been levied on as the property of G. G. Long, under a tax fi. fa. which was issued by the City of Atlanta for taxes for the year 1923; that on March 9, 1923, Long sold the property to one Clay, who thereafter, on March 10, 1923, sold the same to Mrs. Crim, and she sold the same, on December 6, 1923, to petitioner; that at and after the time that Long sold the property to Mrs. Crim he owned other land in the City of Atlanta, which may be referred to as the Azalia Street property, the land being located

---

Taxation, 37 Cyc. p. 1145, n. 41.

on that street. Plaintiff also introduced the affidavit of the chief clerk in the tax assessors' office in the City of Atlanta, who as such has access to the field books, assessors' books, and tax digests of the city, and who deposed that "a certain lot on the east side of Azalia Street in the City of Atlanta, commencing at a point 148 feet south of the southeast corner of Azalia and Mathews streets, and running thence south on the east side of Azalia Street 50 feet, and extending back east same width as front 153 feet, and being the rear portion of lots 16, 17, and 18 of Murphy Real Estate Company, was included in said return of the said G. G. Long." The execution issued by the City of Atlanta for taxes of 1923 was introduced by the Columbia Trust & Realty Company. The entries on the execution show that the total amount of tax of G. G. Long for 1923 in favor of the City of Atlanta was $2,448.75 principal, and $78.50 interest, with certain items of cost. This execution was recorded in the city marshal's office, and the marshal transferred it to the Atlanta Mortgage Company, which transferred it to the Columbia Trust & Realty Company. It was numbered 274, and was recorded in general execution docket 37 on April 10, 1924. A number of releases were attached thereto, but none as to No. 36 Azalia Street. The unpaid balance on the execution was $327.10. Plaintiff also introduced evidence showing that on January 19, 1924, Long made a loan deed to the Atlanta Mortgage Company, covering the Azalia Street lot; that on March 3, 1925, this loan deed was foreclosed, and a deed covering the property was executed by the sheriff to T. J. Norman. Defendant introduced the affidavit of H. N. Pannell, who, on March 4, 1924, was assistant-secretary of the Atlanta Mortgage Company, now the Columbia Trust & Realty Company, showing the purchase by the Atlanta Mortgage Company of the city tax fi. fa. No. 274; that this tax fi. fa. covered 49 pieces of property, among them the property in question in this case and numerous other lots.

At the conclusion of the introduction of the evidence the court passed the following order: "The within cause coming on for hearing, and after hearing evidence and argument, it is, upon consideration, ordered that defendant W. E. Harwell, city marshal, and Columbia Trust Company be and they are restrained and enjoined as prayed, and the levy of the tax fi. fa. described in plaintiff's petition upon his property is dismissed. The defendants

may proceed against the property of G. G. Long in the order as provided by statute; that is, in the inverse order of the alienation of the several parcels. This March 10, 1926." To this judgment the Columbia Trust & Realty Company excepted on the ground that the same was contrary to the evidence and to the law.

We are of the opinion that from the evidence in the case the judgment rendered by the court necessarily followed. Questions almost identical with that here involved have been decided by this court; and the rulings made in those cases and the discussion of the questions render unnecessary any further discussion here. The similarity of this case to that of *Merchants National Bank of Rome* v. *McWilliams*, 107 *Ga.* 532 (33 S. E. 860), will be apparent upon reading that decision, where it was said: "By the provisions of the Civil Code [1895], § 2791, liens for State and county taxes are declared superior to all other liens; taxes due the State being first in rank, and taxes due the county being second. And such taxes are to be charged against the owner of the property. Political Code [1895], § 778. By § 5424 of the Civil Code [1895], which was founded on the case of *Craigmiles* v. *Gamble*, 85 *Ga.* 439 [11 S. E. 838], it is provided that where property is subject to a lien and part of it is sold by the debtor, the part remaining in him should be first applied to the payment of the lien; and if the property subject to such lien is sold in several parcels at different times, the parcels should be charged in the inverse order of their alienation—that is to say, that the last parcel sold, if no other property remains in a debtor against whom the tax execution issued, shall be subject to the payment of all the taxes due at the time of the last sale. In this case it appears by the petition that on the 24th day of April, 1895, King conveyed two several parcels of land to the claimant, the Merchants National Bank of Rome; and that on the 7th day of July, 1896, McWilliams purchased at sheriff's sale certain other property sold as the property of King under the foreclosure of a mortgage. The mortgage held by W. T. and O. H. McWilliams was but a lien on the property of King, inferior to the tax liens, and the sale by the sheriff in July, 1896, under the foreclosure of that mortgage, is in law to be treated as a sale by King. So that, according to the petition, the property purchased at the foreclosure sale by McWill-

iams was the last parcel of property sold by King; and under the terms of the section above referred to, that parcel of property is charged with the payment of all taxes which were due by King to the State and county at the time of the sale. This may be a hard and oppressive law; but the principle upon which it is based is, that, where one has purchased from another and paid value for property, so long as other property is owned by the grantor such property should on equitable principles be first applied to the payment of the debts of the grantor; and where liens exist on all of it, that the lienors must make the money for which they have a lien out of the property owned by their grantor, before proceeding against that in the hands of the grantees for which the latter have paid value, thus making the debtor pay claims against him out of his own property in preference to that belonging to others. The law of the code to which we have referred does not deal with debts, but with liens; when one purchases property from another in good faith for value, a debt against the grantor can not ordinarily be enforced against the property purchased; but when there is an existing lien on the property purchased, as well as other property of the debtor, the enforcement of the lien should, under plain principles of justice, first be directed to the property which the grantor retains."

In the case of *Askew* v. *Scottish American Mortgage Co.*, 114 *Ga.* 300 (40 S. E. 256), it was said: "Where the owner of two parcels of land conveys to two different persons the respective parcels merely for the purpose of securing the payment of debts due each, and afterwards, though at different times, by relinquishments of his right to have the lands reconveyed to him upon payment of the debts, casts upon the holders of the security deeds the absolute title to the respective tracts of land, the holder of the security deed to whom the relinquishment was made later in point of time should, under the rule laid down in the Civil Code, § 5424, when the owner of the land is insolvent, be required to pay a sum which became due as taxes upon both parcels after the execution of the security deeds but before the dates of the respective relinquishments. *Merchants Nat. Bank* v. *McWilliams,* 107 *Ga.* 532, followed, and *Brooks* v. *Matledge,* 100 *Ga.* 367 [28 S. E. 119], distinguished." And the principle stated in the cases cited is also to be found in *Clark* v. *Monroe County Bank,* 33 *Ga.*

*App.* 81 (125 S. E. 603), and *Noles* v. *Few,* 155 *Ga.* 471 (117 S. E. 374).    *Judgment affirmed. All the Justices concur.*