410

KENNEDY *et al. v.* HOWARD, tax-collector, *et al.*

No. 11536. NOVEMBER 18, 1936.

*Clifford Hendrix* and *Hendrix & Buchanan,* for plaintiffs.

*J. A. McCurdy Jr.,* for defendants.

GILBERT, Justice. Alfred D. Kennedy and certain other owners of real estate incorporated as a part of Georgia Militia District No. 1226, known as Grogan's District, sought to enjoin H. H. Howard, tax-commissioner and tax-collector and ex-officio sheriff of DeKalb County, and J. R. Hall, sheriff of DeKalb County, from proceeding with the levying of tax fi. fas. on their property for the years 1928 to 1933 inclusive, or some of those years, from selling their property thereunder, and to have the tax fi. fas. levied on their property by the DeKalb County officials declared null and void, because their property had already been returned for taxation to the tax-receiver of Fulton County and the taxes on some of said property had already been paid to the tax-collector of Fulton County for the years for which the defendants were seeking to collect taxes thereon. The petition alleged substantially the following facts: Petitioners' lands are located in Georgia Militia District No. 1226, known as Grogan's District, which was established in 1861 in Milton County by the inferior court of that county. In 1926, upon petition filed with the ordinary of Fulton

County, Grogan's District became a part of Fulton County with the approval of the grand juries of Milton and Fulton Counties. In 1928 the county commissioners of Fulton County appointed a commission to define the boundary lines of Grogan's District. The commission did so. In 1931 the board of county commissioners of Fulton County certified these proceedings to the Governor, who approved them and designated Grogan's District as being in Fulton County. One of the boundary lines of Grogan's District was the county line between Fulton County on the north and DeKalb County on the south. A dispute regarding that part of that county line developed between certain citizens of Fulton and DeKalb Counties. In 1933 the Governor appointed a surveyor to establish the true line and report his findings to the Secretary of State. In 1934 the Secretary of State approved the surveyor's report and survey, and specified the true boundary line between Fulton and DeKalb Counties, and declared that petitioners' property, which was included in the survey, was in DeKalb County. In 1935 H. H. Howard, tax-commissioner and tax-collector of DeKalb County and ex-officio sheriff of that county, assessed the property of the petitioners for real-estate taxes, some of it for the years 1928 to 1933 inclusive, and some for only a portion of that period. All of the property of several of the petitioners had been returned, and all of the taxes thereon had been paid, to Fulton County for the years 1928 to 1933 inclusive. The property of the other petitioners had been returned for taxation to Fulton County for the years for which the DeKalb County officials sought to collect taxes thereon, and taxes thereon had been paid for several of those years.

Petitioners contend that their property was in Fulton County during the period 1926 to 1934; that during that period the tax officials of that county demanded that petitioners' property be returned for taxes in Fulton County; that during that period the tax officials of DeKalb County, including the defendants, did not object to petitioners' returning their property in Fulton County, and they took no action to compel petitioners to make their returns in DeKalb County; that they had consented by their acts to Fulton County's exercising jurisdiction over their lands as being in Fulton County; that it would be unconscionable and inequitable to make them pay their taxes twice.

The defendants demurred generally and specially to the petition. The court overruled the general demurrer, and sustained certain grounds of the special demurrer attacking as immaterial and irrelevant and as legal conclusions certain allegations to the effect that the property in controversy was in Fulton County during the period from 1926 to 1934, and that the DeKalb County officials by their acts had consented to petitioners' returning their property and paying their taxes thereon to Fulton County instead of DeKalb County for the years 1928 to 1933 inclusive. To the sustaining of certain grounds of the special demurrer the plaintiffs excepted pendente lite, and assigned error thereon. Thereafter counsel for the plaintiffs and counsel for the defendants signed an agreed statement of facts pertaining only to the amended petition after rulings on the general and special demurrers, and agreed to try the case before the judge without a jury. The plaintiffs offered in evidence several affidavits by various officers of Fulton County, and one by one of the petitioners, which tended to support the allegations of the petition. The defendants objected to these affidavits, and in his final decision the judge rejected the affidavits as evidence, and ruled that the defendants had authority to issue executions against petitioners for all taxes levied by DeKalb County for county or school purposes for the year 1928 and all subsequent years, and denied injunctive relief as to such taxes. But he ruled that the defendants did not have authority to issue executions for taxes due to the State, where such taxes had been actually paid to the tax-collector of Fulton County. The plaintiffs excepted and assigned error on this judgment, on the general grounds, and because the court erred in dividing the tax fi. fas. by enjoining the defendants from enforcing the fi. fas. for the State, and at the same time refusing to enjoin them from enforcing them for DeKalb County. They assigned error also on the rejection of the affidavits as evidence.

Among the facts agreed upon by the parties are the following: (1) "Petitioners are the owners of certain lands lying in the extreme northern part of DeKalb County, Georgia, adjoining or in close proximity to the boundary line between DeKalb County and Fulton County." (2) "Some doubt had existed in the community regarding the exact location of this boundary line which separated DeKalb County and Milton County. On August 18,

1926, this part of Milton County became a part of Fulton County. The lands of petitioners were incorporated as a part of Grogan's District of Georgia Militia District No. 1226, same being a Militia District of Fulton County, Georgia, the boundaries of which were reported to Honorable L. G. Hardman, then Governor of Georgia, by the commission fixing same on April 1, 1931, and were approved by him on April 4, 1931." The first division of the agreement is construed to mean that the lands were in DeKalb County at the time this suit was brought.

■ Under the agreed statement of facts, the lands on which the fi. fas. have been levied were all in Grogan's District, Milton County, until August 18, 1926, and on that date became a part of Grogan's District, Fulton County. In 1933, on petition of DeKalb County, according to the Code, §§ 23-401 to 23-408 inclusive, the line between Fulton County and DeKalb County, where it touched Grogan's District, was surveyed, established, and, on appeal, fixed by the Secretary of State in 1934. The taxes sought to be collected by DeKalb County all were levied for one or more years between 1926 and 1934, but not including either of those years. It is conceded that all of the property on which the taxes are sought has been regularly returned in Fulton County, and that all of the taxes have been paid or will be collected. The sole question is whether the facts just stated will prevent collection for the same years by DeKalb County, or whether the payments and returns to Fulton County will be held full payment of all taxes required of the taxpayers. The court held that no State taxes could be collected which had already been collected by Fulton County. To hold that DeKalb County may collect would subject all of the petitioners to the necessity of paying the county taxes to two counties. No bad faith or any negligence is charged to the petitioners. It is merely urged that they were bound to know in which county their lands were situated and what was the law. The tax officials of DeKalb County made no claim during those years for taxes on petitioners' lands. Petitioners did nothing to mislead them. In 1927 DeKalb County could have demanded these taxes, and thus promptly put these petitioners on notice and inquiry. This is not to say that the mistakes or ignorance of the tax officials would estop the county from asserting legal rights. The agreement of facts, it is repeated, states that the lands be-

came a part of Fulton County in 1926. If so, the property was properly returned in, and the taxes thereon were properly paid to, Fulton County. The view we take is that the lands involved lawfully became a part of Fulton County in 1926, and so remained until there was another survey and a new line placing them in DeKalb County. Each survey was to fix the true line, and each will be treated as having done so, and so to remain until another change should be lawfully made. The taxpayer in these circumstances, having done no wrong, can not be unjustly made to pay the county taxes for the same years to two counties. Double taxation is not favored. While it sometimes prevails, it is against the generally favored doctrines of taxation. We hold under the law and facts that the lands of petitioners were part of Fulton County during the years 1927 to 1933 inclusive, and that DeKalb County is not entitled to tax them for those years.

■ Will a court of equity interfere with a levy for county taxes? The Code, § 92-7901, declares: "No replevin shall lie, nor any judicial interference be had, in any levy or distress for taxes under the provisions of this Code, but the party injured shall be left to his proper remedy in any court of law having jurisdiction thereof." The decision in *Harris Orchard Co.* v. *Tharpe,* 177 *Ga.* 547 (170 S. E. 811, 88 A. L. R. 1212), shows that there are instances where efforts to collect taxes may be enjoined. In this case the fi. fas. on which the levies were made are void. Moreover, equity has jurisdiction "where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law." Code, § 37-301. In *Smith* v. *Dees,* 92 *Ga.* 549 (supra), injunction was the remedy afforded under facts somewhat similar to, but not identical with, those in the present case. The question of jurisdiction was not raised in that case. *Judgment reversed. All the Justices concur.*